**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**MARK B. MITSKOVSKI,**
**ELIZABETH A. MARTINA and**
**THOMAS J. PISA,**

                    **Petitioners,**          **04-CV-0465(Sr)**

**v.**

**BUFFALO AND FORT ERIE PUBLIC**
**BRIDGE AUTHORITY,**

                    **Respondent.**

_____

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #38.

Currently before the Court is Respondent's motion for summary judgment (Dkt. #44), and Petitioners' cross-motion for summary judgment.  Dkt. #52.  For the following reasons, Respondent's motion is granted and Petitioners' motion is denied.

## PROCEDURAL BACKGROUND

Petitioners are residents in the neighborhood of the Peace Bridge.  Dkt. #1-2, ¶ ¶ 1-3.  They commenced this action by Notice of Petition filed May 28, 2004 in the New York State Supreme Court, County of Erie, seeking a declaration that the Buffalo and Fort Erie Public Bridge Authority ("Public Bridge Authority"): (1) is a state

agency and public body subject to the New York State Environmental Quality Review Act ("SEQRA"), New York State Freedom of Information Law ("FOIL"), and New York State Open Meeting Law; (2) that it violated SEQRA by segmenting the Border Infrastructure Improvement Project ("BIIP"), from the Capacity Expansion Project ("CEP"), and failing to conduct an adequate environmental review of the BIIP; and (3) that it violated an Order of the Hon. Eugene M. Fahey, J.S.C., in the consolidated cases of *City of Buffalo v. New York State Dep't of Envtl. Conservation and Buffalo Olmsted Parks Conservancy v. The Buffalo and Fort Erie Pub. Bridge Auth.*, Index No. 1999/4309. Dkt. #1-2.

The Public Bridge Authority removed the action to this Court pursuant to 28 U.S.C. § 1331. Dkt. #1. Petitioners moved to remand on the ground, *inter alia*, that the complaint alleged only state claims and did not invoke federal question jurisdiction. Dkt. #4. By Decision and Order entered October 5, 2004, the Hon. John T. Elfvin granted the motion to remand because Respondent failed to comply with a local rule requiring an index of documents filed in state court be filed in this Court upon removal. Dkt. #17. On appeal, the Court of Appeals for the Second Circuit determined that remand was "too drastic a remedy for such a minor noncompliance." *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth*., 435 F.3d 127, 133 (2d Cir. 2005).

The Court of Appeals also determined that it had jurisdiction to determine subject matter jurisdiction even though Judge Elfvin had not reached that question. *Id.* at 133-34. Addressing the existence of subject matter jurisdiction, the Court of Appeals

stated:

> The construction of an interstate or international compact approved by Congress under the Compact Clause of the Constitution, *see* U.S. Const. art. I, § 10, cl. 3,[1] presents a federal question. *See Cuyler v. Adams*, 449 U.S. 433, 438 . . . (1981); *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 278 . . . (1959). The Authority is the product of a compact between New York and Canada, approved by Congress. In 1934, Congress gave its consent to the State of New York to enter into the agreement or compact with the Dominion of Canada set forth in chapter 824 of the Laws of New York, 1933, and an act respecting the Buffalo and Fort Erie Public Bridge Authority passed at the fifth session, Seventeenth Parliament, Dominion of Canada (24 George V 1934), assented to March 28, 1934, for the establishment of the Buffalo and Fort Erie Public Bridge Authority . . . H.R.J. Res. 315, 73rd Cong., 2d sess. (May 3, 1934). In 1957, Congress gave approval to a reconstituted compact authorizing the Authority. *See* H.R.J. Res. 342, 85th Cong., 1st sess. (Aug. 14, 1957).

*Id.* at 134-35. Because petitioners sought a declaration that the Respondent is a New York State agency, and resolution of that claim would "inevitably require construction of the compact," the Court of Appeals determined that the "federal question jurisdiction of the District Court has been properly invoked." *Id.* at 135.

## FACTUAL BACKGROUND

In the early 1990's, the Public Bridge Authority contemplated a number of construction projects, including the CEP, the Commercial Vehicle Processing Center Project in Canada, the Canadian Plaza/Gateway Project and the U.S. Plaza/Connecting Roadways Project. *City of Buffalo v. New York State Dep't of Env. Cons.*, 184 Misc.2d

---

[1] The Compact Clause states, "No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State." U.S. Const. Art. I, § 10, cl. 3.

243, 246 (Erie Cty 2000). The New York State Department of Environmental Conservation ("NYSDEC"), assumed the lead agency role for the environmental review of the CEP and determined that the construction of a second international bridge south of the existing bridge would have no significant adverse impact on the environment. *Id.* at 246-247. Before reaching that conclusion, the NYSDEC considered "whether the second Bridge proposal would be improperly segmented from the review of any possible future and related inland development (improvement to the Peace Bridge Plaza in the City of Buffalo)," and determined that segmentation of the CEP from the U.S. Plaza/Connecting Roadways Project was permissible. *Id.* at 247-248. As a result, the environmental review "did not address the bridge and bridge construction relating to traffic flow into (1) the current plaza, (2) construction of a new plaza in the current location, or (3) construction of a new plaza in a new location." *Id.* at 248-49.

The City of Buffalo, Buffalo Olmsted Parks Conservancy, Inc., and the Episcopal Church Home, among others, commenced an article 78 proceeding in New York State Supreme Court challenging the NYSDEC's issuance of a permit for the construction of a second bridge on the ground that the NYSDEC failed to comply with SEQRA by improperly segmenting the environmental review. *See* 04-CV-693 at Dkt. #4. The petition also sought to enjoin the Public Bridge Authority from performing any actions in furtherance of the development of a second bridge until environmental concerns had been addressed. *See* 04-CV-693 at Dkt. #4.

In an opinion dated April 7, 2000, Justice Fahey determined that the

NYSDEC's declaration of no adverse environmental effect was fundamentally flawed

because it improperly segmented consideration of the environmental impact of the

proposed bridge construction from the proposed plaza construction, stating:

> In this instant case, in terms of traffic flow, the bridge and the adjoining plaza with the connecting roadways are a single, inseparable development entity. The effects of their construction must be reviewed together. A final environmental impact statement considering the potential environmental effects of the proposed bridge, proposed plaza and alternative is required.

*Id.* at 255. Justice Fahey concluded:

> The failure by Respondent DEC to consider the cumulative impact of bridge and plaza construction constituted a violation of the Department's obligation to take "a hard look" under SEQRA. Therefore, the determination of nonsignificance was arbitrary and capricious. The issuance of the permit by Respondent DEC is annulled. The Negative Declaration of Respondent DEC is annulled. The Respondent PBA is permanently enjoined from going forward with bridge construction until it has complied with SEQRA. The matter is remitted to Respondents PBA and DEC for reconsideration of the cumulative impact of the proposed bridge construction and the related plaza/connected roadways project, and consideration of alternatives, and for preparation of an environmental impact statement concerning the same.

*Id.* at 255-57. Accordingly, Justice Fahey issued the following Order:

> Petitioner, THE CITY OF BUFFALO ("City") having commenced the above referenced Article 78 Proceeding to challenge certain actions of the Respondent Buffalo and Fort Erie Public Bridge Authority ("PBA") in obtaining a permit from Respondent New York State Department of Environmental Conservation ("DEC") and certain actions of Respondent DEC in granting that permit, all relating to the possible construction of a new bridge adjacent to the Peace Bridge crossing between Fort Erie, Ontario, Canada and

Buffalo, New York and such proceeding having come on to be heard before the undersigned Justice of the Supreme Court,

* * *

. . . it is hereby

**ORDERED and ADJUDGED** that the Petition of the City is hereby granted; and it is further

**ORDERED and ADJUDGED** that Permit No. 0-1402-00415/00005 issued by Respondent DEC to Respondent PBA on January 27, 1999 is hereby annulled; and it is further

**ORDERED and ADJUDGED** that Respondent PBA is permanently enjoined from going forward with bridge construction described in the aforesaid permit and negative declaration or physical acts in furtherance thereof until Respondent PBA has completed proceedings complying with the New York State Environmental and Quality Review Act ("SEQRA"); and it is further

**ORDERED and ADJUDGED** that the matter is remitted to Respondents PBA and DEC for reconsideration of the cumulative impact of the proposed bridge construction project and the related plaza/connecting roadways project, and consideration of alternatives with respect thereto and, before proceeding, for the preparation of an environmental impact statement with respect to the same.

*See* 04-CV-693 at Dkt. #1-4.

In accordance with Justice Fahey's Decision and Order, the General Manager of the Public Bridge Authority, Ron Rienas, affirms that all permits were vacated and a new environmental assessment, the "2000 Bi-National Integrated Environmental Process" was initiated with respect to the construction of a second

bridge and a new U.S. plaza and connecting roadways in Buffalo and Fort Erie.  Dkt. #46, ¶ 2.  A draft Environmental Impact Statement ("EIS"), was circulated for comment in September, 2007, but has yet to be completed.  *See* Draft EIS at http://peacebridgex.com.  The draft EIS contemplates a no build alternative; construction of a companion bridge to the south of the existing bridge with reconfiguration of connecting roadways and a new and expanded US Federal Inspection Plaza in Buffalo; and construction of a companion bridge to the south of the existing bridge with reconfiguration of connecting roadways and a US Federal Inspection Plaza in Fort Erie under a Shared Border Management Plan.  *See* Draft EIS at pp.6-7.

In the interim, the Public Bridge Authority commenced work on the BIIP, which is the subject of this lawsuit.  The BIIP was financed by Canadian Border Infrastructure Funds to address lengthy delays in processing traffic caused by increased security measures following the terrorist attacks of September 11, 2001.  Dkt. #46, ¶ ¶ 3 & 14-15.  The BIIP improvements included the relocation of toll booths and Public Bridge Authority administrative functions from the U.S. plaza to the Canadian plaza, relocation of the U.S. duty free store and the addition of three new commercial inspection booths.  Dkt. #46, ¶ ¶ 16 & 18 and Exh. B.

## DISCUSSION AND ANALYSIS

Petitioners argue that the Public Bridge Authority is a New York State municipal entity subject to SEQRA and that it violated SEQRA by failing to conduct an

adequate environmental review of the BIIP and by segmenting its review of the BIIP. Dkt. #55, pp. 24-31 & 36-44.  As a state agency, petitioners argue that Respondent should also be subject to FOIL and New York's Open Meetings Law.  Dkt. #55, pp.31-33.  Petitioners also argue that Respondent should be subject to the City of Buffalo's Citywide Site Plan Review.  Dkt. #55, pp.45-46.  Petitioners assert that Justice Fahey already determined that Respondent is a state agency subject to New York law and argue that this Court should not overturn his determination.  Dkt. #55, pp.29-31.  In addition, petitioners ask this Court to declare that Respondents have violated Justice Fahey's Order by proceeding with border infrastructure improvements before completion of an EIS considering the cumulative effect of all proposed construction projects.  Dkt. #55, p.47.


Respondent argues that this Court must reject petitioners' request for a declaration that the Public Bridge Authority is a New York state agency subject to state statutes because the Court of Appeals for the Second Circuit has rejected that contention and determined that the Authority is an international compact entity.  Dkt. #49, pp.6-10.  Respondents argue that as a compact entity, the Public Bridge Authority cannot be subject to state statutes unless the compact expressly requires adherence to such statutes.  Dkt. #49, pp.6-10.  Respondents deny that this petition has any impact upon Justice Fahey's Order and affirm their compliance with that Order.  Dkt. #64, p.11.

<u>Summary Judgment Standard</u>

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c) .  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the

> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


<u>Is the Public Bridge Authority a State Agency?</u>

The Public Bridge Authority was created by the New York State Legislature in 1933 as a "body corporate and politic, constituting a public benefit corporation." Laws of New York, Chapter 824 § 1 (1933). The legislation further states that the Public Bridge Authority "shall constitute the municipal corporate instrumentality of the state of New York, for the purposes of carrying out the provisions of this act." Laws of New York, Chapter 824 § 2 (1933). Thus, the Public Bridge Authority was created as a public benefit corporation or municipal corporation or agency of the State of New York.


The New York State legislature authorized and empowered the Public Bridge Authority to enter into a compact with Canada with respect to the bridge crossing between New York and Canada. Laws of New York, Chapter 824 § 2 (1933). As required by the United States Constitution, Congress granted its consent to permit the State of New York to enter into the compact with Canada for the establishment of the Public Bridge Authority. House Joint Resolution 315, 73rd Congress, May 3, 1934. Thus, the Public Bridge Authority is "the product of a compact between New York and Canada, approved by Congress." *Mitskovski*, 435 F.3d at 135. As the Court of Appeals for the State of New York explained:

the State has chosen to enter into a compact with the
Dominion of Canada for the creation of a new body
corporate and politic with a board appointed by the State,
responsible to the State and acting for the State.  We have
held that similar bodies corporate created to act for the State
in carrying out a public purpose are State agencies. . . . We
find that the corporate body here created is such an agency
of the State.

*People ex rel. Buffalo and Fort Erie Pub. Auth. v. Davis*, 277 N.Y. 292, 299 (1938).


<u>What Effect Does an Interstate/International Compact have upon a State Agency?</u>

An "interstate compact, by its very nature, shifts a part of a state's
authority to another state or states, or to the agency the several states jointly created to
run the compact."  *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994).
The resulting entities "are to be regarded not as extensions of each compacting state's
authority, but rather as independently functioning parts of a regional polity . . .."
*International Union of Operating Eng'rs, Local 542 v. Delaware River Joint Toll Bridge
Comm'n*, 311 F.3d 273, 276 (3d Cir. 2002).


"In all circumstances, the compact governs the internal operations of the
compact entity."  Matthew S. Tripolitsiotis, *Bridge Over Troubled Waters: The
Application of State Law to Compact Clause Entities*, 23 Yale L. & Pol'y Rev. 163, 167
(2005).  The Court's "role in interpreting the Compact is, therefore, to effectuate the
clear intent of both sovereign states, not to rewrite their agreement or order relief
inconsistent with its express terms."  *International Union of Operating Eng'rs*, 311 F.3d
at 276.

Neither state may unilaterally regulate the internal operations of a compact entity. *See* Tripolitsiotis, 23 Yale L. & Pol'y Rev. at 182. For example, New York cannot enforce its human rights laws and New Jersey cannot enforce its "Barrier-free Statute" requiring access for individuals with disabilities upon the Port Authority of New York and New Jersey. *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 65 (2d Cir.), *cert. denied*, 531 U.S. 818 (2000) and *HIP, Inc. v. Port Authority of New York and New Jersey*, Civ. No. 07-2982, 2008 WL 852445 (D. Ct. N.J. March 28, 2008). Nor could New York impose its anti-discrimination statute regarding employment for former inmates upon the Waterfront Commission of New York Harbor, an interstate compact between New York and New Jersey. *Malverty v. Waterfront Comm'n of N.Y.*, 71 N.Y.2d 977, 979-80 (1988). Similarly, New York cannot impose its Labor Law upon the Port of New York Authority. *Agesen v. Catherwood*, 26 N.Y.2d 521, 526 (1970) (New York's Labor Law "should not be construed to impose a unilateral regulation of the wages of only a fraction of the Authority's employees, namely, those building and mechanical workers who, it is alleged, work solely on projects within the State of New York.").

However, compact entities remain subject to regulation by the compacting states when their actions affect the health or welfare of the citizens of the state. *See* Tripolitsiotis, 23 Yale L. & Pol'y Rev. at 182. As the Court of Appeals for the State of New York explained in *Agesen*:

> The distinction between the internal operations and conduct affecting external relations of the Authority is crucial in charting the areas permitting unilateral and requiring bilateral State action. New York and New Jersey have each undoubted power to regulate the external conduct of the

> Authority, and it may hardly be gainsaid that the Authority, albeit bistate, is subject to New York's laws involving health and safety, insofar as its activities may externally affect the public.

26 N.Y.2d at 526-27 (internal citation omitted); *see Dezaio*, 205 F.3d at 65 (*Agesen* "teaches that internal operations of the Authority – unlike its external conduct which is subject to each of the Compact State's health and safety laws – are independent from the unilateral control of either State without the other's concurrence.").

<u>Is the BIIP subject to SEQRA or the City of Buffalo's Site Plan Review Process?</u>

As set forth in the enabling legislation, the Public Bridge Authority has the power to "maintain, reconstruct, repair and replace and operate any properties acquired by it, and pay for the same out of any funds collected by it in the operation of properties acquired by it." Laws of New York, Chapter 824 § 9(5) (1933).[2] Ron Rienas, the General Manager of the Public Bridge Authority, affirms, and petitioners do not dispute, that the BIIP involved the relocation of toll booths and Public Bridge Authority administrative functions from the U.S. plaza to the Canadian plaza as well as the addition of new inspection booths and relocation of the U.S. duty free store within the U.S. plaza and did not utilize any funds from New York State. Dkt. #46, ¶¶ 3 & 16; Dkt. #47, ¶¶ 11 & 15-16; Dkt. #53, p.6.

As the undisputed facts demonstrate that the BIIP involved internal infrastructure improvements and relocation of existing infrastructure, neither New York

---

[2] In 1957, the legislature amended the Public Bridge Authority legislation and renumbered this provision as § 9(e), but made no substantive changes to this section.

nor the City of Buffalo can impose their environmental regulations upon the Public Bridge Authority. To hold otherwise would usurp the authority granted to the compact. *See Seattle Master Builders v. Pacific N.W. Elec. Power & Conservation Planning Council*, 786 F.2d 1359 (9th Cir. 1986) (Council, a compact between Washington, Oregon, Montana and Idaho, not subject to Washington's statute requiring preparation of an environmental impact assessment), *cert. denied*, 479 U.S. 1059 (1987).


Is the Public Bridge Authority subject to New York's FOIL and Open Meetings Law?

The enabling legislation for the Public Bridge Authority authorizes the board to "adopt such by-laws, rules and regulations for the calling and conduct of its meetings and the management of its affairs as it may deem necessary or proper, not inconsistent with the provisions of this act." Laws of New York, Chapter 824 § 7 (1933). This legislation expresses no intent that the Public Bridge Authority would be subject to New York's subsequently enacted FOIL or Open Meetings Law. Moreover, it is obvious that New York's FOIL and Open Meetings Law would affect the internal operations of the Public Bridge Authority. As a result, New York's FOIL and Open Meetings Law are not applicable to the Public Bridge Authority. *See C.T. Hellmuth & Assocs., Inc. v. Washington Metro. Area Transit Auth.*, 414 F. Supp. 408 (D. Md. 1976) (Maryland Public Information Act inapplicable to interstate compact).


Did the BIIP Violate Justice Fahey's Decision and Order?

Justice Fahey's Decision and Order annulled the permit allowing the Public Bridge Authority to proceed with construction of a second bridge and enjoined

the Public Bridge Authority from going forward with bridge construction until the Public

Bridge Authority completed an EIS considering the cumulative impact of the proposed

bridge construction project and the related plaza/connecting roadways project.  See 04-

CV-693 at Dkt. #1-4.  That review – the "2000 Bi-National Integrated Environmental

Process" – is under way and construction of a second bridge has not begun.  Thus,

there is no basis for finding a violation of Justice Fahey's Decision and Order.


## CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment

(Dkt. #44), is **GRANTED** and Petitioner's motion for summary judgment (Dkt. #52), is

**DENIED**.  The Clerk of the Court shall take such steps as necessary to close this case.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
                **January 22, 2010**


                                          s/ H. Kenneth Schroeder, Jr.
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**